LOUISE THOMPSON, APPELLANT, v. YOUNG MEN'S CHRISTIAN ASSOCIATION OF OMAHA, APPELLEE.

FILED MARCH 25, 1932. No. 28061.

*Crofoot, Fraser, Connolly & Stryker,* for appellant.

*Brown, Fitch & West, contra.*

Heard before ROSE, GOOD and DAY, JJ., and FROST and MESSMORE, District Judges.

FROST, District Judge.

This is a suit to recover for personal injuries suffered by Louise Thompson, plaintiff and appellant, who is hereinafter referred to as patron or invitee. In her petition she alleges that the Young Men's Christian Association of Omaha, Nebraska, defendant and appellee, hereinafter referred to as association, maintains steps leading to the entrance of its building from the sidewalk, and that these steps, by constant use, have become worn, recessed and uneven in surface, by reason of which they have become unsafe and dangerous. She also alleges that they were unsafe on the day of the accident because water had been

spilled upon one of them. On the other hand, the association contends that the steps were in an ordinary and usual safe condition, and that if one of them was wet at the time of the accident the association had no knowledge thereof and was not responsible for that condition and had no opportunity to learn of it before the accident. At the conclusion of the evidence the trial court sustained the association's motion to discharge the jury and dismiss the patron's cause of action. A motion for a new trial was filed and overruled and the case is brought to this court.

The complaint is that the court erred in finding that there was not sufficient evidence of negligence on the part of the association to require a submission of the case to the jury.

The patron in her brief says that undoubtedly the accident "happened on account of the condition of this step, combined with the fact that water had been spilled thereon." The negligence of the association depends upon whether the steps had become so worn that their use was not reasonably safe, and whether the water which she claims had been spilled thereon had made them unsafe for use, and that this condition was known to the association or by the exercise of reasonable diligence should have been known to it. There is still another question to be met in disposing of this appeal: Was the patron's knowledge of the condition of these steps such that she assumed any risk that might be involved in their use?

These steps are limestone and have been in use twenty-five years. They have in that time been worn by the heavy travel over them. We are fortunate in having the result of this use shown in exhibit 1, attached to the bill of exceptions. This exhibit does not leave the wear shown by the steps, and particularly the first step, which was the one on which the accident happened, to conjecture, but gives the exact amount of wear upon the face of the tread. The tread is 11½ inches wide and there is some wear thereon at the center back 9½ inches. The wear

extends along the front 2 feet on either side of the center, where it is 1 inch, while on the two sides, 6 inches away, it is 1¾ inches, and at 1 foot away five-eighths of an inch and seven-sixteenths of an inch. In the center, back 6 inches, the wear is nine-sixteenths of an inch, while 6 inches on the two sides it is three-fourths of an inch and seven-sixteenths of an inch. Other figures showing the exact wear at different points on the face of the tread are given in the exhibit, and, generally speaking, the wear becomes less as the distance from the front center becomes greater, until the depression becomes nothing at 9½ inches back and at 2 feet on either side. Exhibit 1 gives the facts which present to the mind a perfect picture of the depression at any point in the face of the tread. There is nothing in the evidence which indicates that the wear has not been fairly uniform or that any particular holes have been made by that wear. The trial court evidently took the view that there was nothing in the wear of this step or of all the steps which indicated that it was negligence for the association to allow their continued use.

The patron says in her testimony that there were a few drops of water just outside the entrance door, and that as she started to step down to the first step she saw a small amount of water upon that step. She further says that, when her foot slipped under her, she sat down on the step and then could see no water, and that later she found her dress that had absorbed the water on the step was wet a distance of six to nine inches across. A few minutes after the accident the business manager of the association went out to observe the place where the accident happened and he testifies at that time he could see no evidence of any water. The patron testified that when she went in the building on the day of the accident she approached over these same steps, and at the time a boy was washing the door windows on one side of the entrance, and when she came back out five minutes later he was just crossing to wash the windows on the other

side and was carrying a pail of water, the inference being that he had spilled the water. The business manager testified that a company was employed to do this work and he knew nothing of anybody being there to wash windows on the morning of the accident.

The law applicable to this case is well settled and most of the legal propositions involved are outlined in the case of *Broadston v. Beddeo Clothing Co.*, 104 Neb. 604. This law puts upon the association the duty to use reasonable care and prudence to keep the steps by which approach is made to the entrance of the building reasonably safe for their use by those having business inside. The association would limit its duty by adding that it is not an insurer against accidents and the *Broadston* case justifies such limitation. The patron claims that she fell on the steps, not only because they were defective from wear, but also because they were wet and slippery. To establish her claim in this latter regard, according to another legal principle announced in the *Broadston* case, she must prove, unless the evidence shows the condition existed and was known to the association, either that the latter had caused the condition or that it had existed a long enough time prior to the accident to charge its servants with notice to afford them a reasonable opportunity to remedy it. The patron's own testimony shows that the window washing was going on as she was entering and during the five minutes that she was inside the building, and that she saw, as she was leaving the building, the drops of water on the sill and at one spot in a depression in the first step. According to the manager of the association the work was being done under contract and the one doing it was not under the control of the association. Therefore, the trial court was justified in concluding that if there was any water on the step the association could not be blamed therefor, because the window washing was done by the servant of another, and because of the very short time between the washing and the accident. In other words, the association had no knowledge

of the water being there, had not itself caused it to be there, and the time that it had been there was too short to charge the association with notice and to afford it a reasonable opportunity to remedy that condition. *Broadston v. Beddeo Clothing Co.*, 104 Neb. 604; *Schnatterer v. Bamberger & Co.*, 81 N. J. Law, 558, 34 L. R. A. n. s. 1077; *Chick v. Gilchrist Co.*, 208 Mass. 183.

The patron's contention is that the condition of the steps was in itself evidence of negligence which required that question to be submitted to the jury. Ordinarily, where oral testimony is depended upon in order to show wear that might be true. The different descriptions of the conditions of the steps then would necessarily vary and there probably would be questions upon which the jury must pass. However, in this case exhibit 1 was prepared by the patron's witness, a civil engineer, and was received in evidence without objection. This exhibit supplies the facts from which we must draw the conclusions as to the condition of the steps. We think the trial court was right in holding that their condition was not such as to make their continued use evidence of negligence. This position finds confirmation in the *Broadston* case, which holds that a customer falling upon a stairway does not necessarily raise a presumption of negligence on the part of the proprietor of the store, and the doctrine of *res ipsa loquitur* does not apply.

In the case of *Garland v. Furst Store*, 93 N. J. Law, 127, it was charged that the defendant maintained a slippery tile floor in the basement which was dangerous for persons to walk upon. The court in the opinion makes use of this significant language: "A mere fall of a person on the premises of another, without any evidence to show how the fall was occasioned, raises no presumption of negligence on the part of the owner, and the doctrine of *res ipsa loquitur*, which is only applicable when the thing shown speaks of the negligence of the defendant, not merely of the happening of the accident, does not apply."

Another closely related legal principle is that the facts that go to show negligence must be established by evidence and not left to inference. This question and other pertinent ones are discussed by the Colorado court in the case of *Thompson Grocery Co. v. Phillips*, 22 Colo. App. 428, a case where the defendant appeared at the plaintiff's place of business for the purpose of purchasing a turkey, and when approaching the counter where the birds were on display fell and seriously injured her arm. The supreme court gives this succinct summary of the facts in the case: "Then taking the testimony in its most favorable light for the plaintiff we find that she had been for some years a patron of the store, in good health with good eyesight, in a well lighted room, walked down an aisle in the meat department of the store that had just been swept, paused at a counter near a clerk to whom she was about to give an order, slipped and fell, sustaining the injuries complained of, and after being seated found a piece of fatty substance on her shoe between the ball of the foot and the instep. There is at least no stronger evidence as to defendant's negligence, and there was no testimony offered tending to contradict the evidence of the defendant as to the custom and efforts to keep its store clean and free from refuse or débris upon the floors. Neither is there any testimony tending to show that defendant could by the exercise of diligence have discovered the existence of the particular substance in question upon its floor, if it in fact was there, which at best can only be inferred from plaintiff's testimony, to the effect that she found such upon her shoe after the accident."

Later in the opinion the court draws these conclusions: "There is no testimony in the case at bar that can in any sense be said to show want of 'reasonable prudence and care,' or that the plaintiff was 'unnecessarily or unreasonably exposed to danger.' At best the testimony in this case can show only by inference that the greasy substance was on the floor." The court, after declaring

that it can find no evidence of negligence, finally concludes as follows: "In this the case of a working woman, dependent upon her labor for support, and with a probably permanent injury, is presented one which strongly appeals to both a court and jury, but to determine otherwise· than we do, would be to hold· that the mere fact of the accident is sufficient in itself to charge the defendant with the fault, for there does not appear from the evidence a failure upon its part to perform any duty which the law enjoins."

In the report of this case in 125 Pac. 563, these propositions are stated as pertinent to the facts:

"1. Evidence, in patron's action against a grocery company for injuries from slipping upon the floor of the store, held not to show defendant's failure to perform any duty resting upon it.

"2. Facts constituting negligence must be proved and not be left to inference.

"3. A grocery company is not liable for injuries to a patron from a fall due to her slipping upon a fatty substance on the floor, unless it or its agents knew, or by the exercise of reasonable diligence could have known, of the presence of such substance."

With the case of *Thompson Grocery Co. v. Phillips*, just discussed, in mind, let us glance at the situation which we have before us. The testimony that there was water on the step must be eliminated from our consideration, as the evidence does not show that the servants of the association had caused the water to be there, or knew of its being there, and it had not been there long enough to charge the association with knowledge and permit of its removal. There remains for consideration the wear of the step at the time of the accident as shown by exhibit 1 and the patron's statement of how she was injured. The character of the injuries are immaterial in view of the instructed verdict. We have already discussed the condition of the step as shown by exhibit 1. The patron states that, as she stepped down into where the

water stood, her right foot slipped and her ankle turned so that the bottom of her right foot was turned towards her left foot. She speaks of stepping into a depression, but exhibit 1 does not show any depression worthy to be named such. The decline, lengthwise of the step, and that was the way she says her foot slipped, was at most only one inch in a distance of two feet. It seems incredible that such a slight decline could have caused her foot to slip towards the other. The patron does not say that her foot slipped out from under her. In view of her testimony, when considered in connection with exhibit 1, we agree with the trial court that there was no justification for holding the association negligent or in concluding that the step was not reasonably safe for the use of its patrons.

There is still another question that is worthy of attention. The patron's prior knowledge of the wear of the steps, which she declares in her testimony could be seen from the street. Bear in mind that these steps furnished the outside approach to the entrance. The patron testifies that she entered the building on the day of the accident about 8:45 a. m. over the same steps and through the same door over and through which she later left. Her knowledge of the steps was therefore quite fresh in mind, as she says she was in the building about five minutes. The authorities generally hold that the risks which are obvious to a person are assumed by her, where, as in the present case, the relation is that of owner and invitee or patron. *Mullen v. Sensenbrenner Mercantile Co.,* 260 S. W. (Mo.) 982, 33 A. L. R. 176; *Hogan v. Metropolitan Building Co.,* 120 Wash. 82; *Woolworth Co. v. Graham,* 257 S. W. (Tex. Civ. App.) 574.

*Mullen v. Sensenbrenner Mercantile Co., supra,* is also instructive and persuasive because of its analogy to the case at bar. There plaintiff was injured while leaving by a tiled exit which she charges had an unusually slick, smooth, and glassy surface and had a dangerous angle or slope in which there was a crack, and that defendant

had failed to warn the plaintiff of these dangerous conditions. The court concluded that the defendant was not liable to the plaintiff, basing its conclusion partially, at least, upon her having a knowledge of the conditions surrounding the place of the accident through having observed that place as she entered shortly before.

*Hogan v. Metropolitan Building Co., supra,* is another analagous case. The plaintiff had entered the defendant's place of business, bought a pair of shoes, and in going out lost her footing on the cement way and fell. That court, in holding that as matter of law the risk was hers, refers to the fact that the accident happened as she came out, the same way she had used on entering the store, and that the situation was perfectly plain, open, and obvious, and known to her.

The case of *Woolworth Co. v. Graham, supra,* is another case of an accident to a customer while leaving the defendant's store. It seems that a customer had dropped a bottle of liquid on the floor outside the store entrance, and that a porter had been called and had attempted to clean it up. However, the patron alleged that the store had negligently permitted the liquid to remain upon the floor. The court declared that, while the evidence failed to show any negligence on the part of the defendant, it did show negligence on the part of the plaintiff in going over the particular spot, "instead of taking the obviously safe course that the most ordinary prudence would have dictated of stepping over or walking around the spot, so it is obvious that her fall and consequent injuries were brought about by her own thoughtlessness."

The conclusions of the court in the last case are of unusual significance because of its close analogy to the case at bar. The plaintiff in her testimony states that she saw the water on the step as she stepped down. There does not appear to have been any reason why she could not have stepped a few inches one way or the other and thus avoided stepping upon that particular spot where she says the water had gathered, and to which, by inference, she attributes her slipping.

This case has been ably briefed and a large number of cases have been cited by the opposing attorneys. However, an extensive analysis of these authorities would serve no useful purpose, as the legal questions involved are not much controverted; while the most of these questions involve negligence based upon facts which present but little similarity to those upon which the plaintiff claims negligence herein.

The trial court, therefore, was right in discharging the jury and in dismissing the plaintiff's cause of action. The judgment is

AFFIRMED.