LEE SHOWERS, APPELLEE, V. A. H. JONES COMPANY ET AL., APPELLANTS:
GLOBE INDEMNITY COMPANY ET AL., APPELLEES.

FILED APRIL 6, 1934. NO. 28873.

*Stiner & Boslaugh* and *Edmund P. Nuss,* for appellants.

*Miller & Blackledge* and *Hamer & Tye, contra.*

Heard before ROSE and PAINE, JJ., and LIGHTNER, REDICK and THOMSEN, District Judges.

REDICK, District Judge.

Action to recover damages claimed to have been occasioned by an automobile collision between the gravel truck driven by plaintiff and a Chrysler automobile driven by the defendant Osborn, an employee of the defendant A. H. Jones Company. The collision took place at the intersection of two highways in Adams county on June 23, 1931, at about 6:15 p. m. The petition alleged that as plaintiff was driving his truck south approaching the intersection and about to enter the same he saw the defendant's car about 100 yards west of the intersection and proceeded across, and when he had reached about the south line of the east and west road the defendant carelessly and negligently ran into the side of plaintiff's truck, overturning it and causing serious injuries to plaintiff. The material charges of negligence are that the defendant's employee was driving his car at an excessive rate of speed, did not have it under proper control, failed to yield to plaintiff the right of way, and failed to see the plaintiff in the intersection.

The defendants answered separately and denied each and every allegation of the petition, and alleged that the collision was caused by the negligence of the plaintiff in several particulars, and defendant A. H. Jones Company filed a cross-petition seeking to recover damages for injury to the automobile.

Trial to a jury was held, resulting in a verdict and judgment for plaintiff, motion for new trial overruled, and defendants appeal.

This is one of a somewhat numerous class of cases presented to the court which bring to mind the remark of Hamlet to Horatio that "There are more things in heaven

and earth, Horatio, than are dreamed of in your philosophy;" by which we mean to observe that it is placing an inordinate strain upon the human understanding to require it to account in a reasonable manner for the occurrence of the accident.

The situation surrounding the two drivers, without dispute, was substantially as follows: The sky was clear, and the accident happened in broad daylight. The intersection of the two highways was in the open country with no obstructions of moment to obscure the vision of either driver within 500 or 600 feet. The north and south highway was not as greatly traveled as the east and west, but consisted of a well-defined roadway about 20 feet in width. There was a gradual rise for about a quarter of a mile north of the intersection; there was a growth of wild clover on the margin of the highway about four or five feet high, but it did not form any substantial obstruction to the view of either driver.

The east and west highway was more traveled, was practically level for 30 or 40 yards west of the intersection, and then took a gradual rise to the top of the hill 180 or 200 yards from the intersection. At the top of the hill, on the north side of the road, was a farm house and outbuildings and a straw stack somewhat north and about 30 or 40 yards east of the house.

The evidence of the plaintiff is to the effect that when he was about 10 rods north of the intersection he looked to the west and saw defendant's automobile just coming down that little raise about 25 or 30 rods from the intersection, and that when he was about 20 or 25 feet from the intersection he saw defendant's car about 50 or 60 feet therefrom, and believing that he could safely cross, and when he was about 20 or 25 feet from the center of the intersection, he stepped on the gas; that he was traveling about 22 or 23 miles an hour approaching the intersection and on account of his heavy load did not increase his speed more than a mile an hour before the collision

which occurred when his rear wheels were upon the south line of the intersection; defendant's automobile striking the truck just forward of the rear right wheel.

Defendant Osborn testified that as he reached the top of the hill he looked to the north to see if the road was clear, "and seeing nothing in that road from the intersection to the brow of the hill running north from that intersection, I proceeded on without giving it much more consideration." He said he was uncertain which way to travel, whether to turn south or continue east and slackened speed with the intention of turning south, but finally concluded to go east; that as he came into the intersection he slowed down to about 20 miles an hour; that he heard the truck, looked up and saw it for the first time about 15 or 20 feet to his left; that he then turned his car to the right in an attempt to avoid the collision. Osborn testified that in his opinion plaintiff's truck was traveling at the rate of 40 miles an hour, but it is extremely doubtful whether this testimony should have been received as he was hardly in position to make a reliable estimate. In all other respects we are impressed with the fairness with which the witness gave his testimony.

The evidence is practically without dispute that the collision took place very close to the south line of the east and west road and about 12 feet west of the east line of the north and south road; the truck proceeded forward into the ditch and overturned about 60 or 70 feet south of the intersection, while the Chrysler turned on its side on the south line and about the center of the road.

In this state of the evidence we are convinced that the finding of the jury was amply warranted. If Osborn had looked to the north at any time within 100 or 150 feet of the intersection he must have seen the truck approaching, and it seems a warrantable inference that the truck reached the intersection first, and it is difficult to understand why Osborn did not see it until it was within 20 or 25 feet of him, unless, as he says, after having looked at a

point near the top of the hill he did not thereafter give it much consideration.

One of the charges of contributory negligence is that plaintiff failed to yield to Osborn the right of way at the intersection. This is based upon the proposition that Osborn was on plaintiff's right, and assumes that both cars reached the intersection at approximately the same time. However, as above suggested, an inference that plaintiff reached the intersection first is warranted from the facts testified to by him, and which the jury might believe, that when the truck was 20 or 25 feet north, the Chrysler was 50 or 60 feet west of the intersection, and the further undisputed fact that the collision took place on the south line. The jury were correctly instructed by the trial court as to the right of way, and the duty of the party having such right to yield if to exercise it would probably result in a collision. The questions who had the right of way and whether plaintiff was negligent in attempting to cross, or defendant in not yielding the right of way, if he had it, were all for the jury who seem to have resolved them in favor of plaintiff.

In a written statement made by Osborn shortly after the accident he said he was coming along at the rate of 30 or 35 miles an hour, and he testified that he did not reduce his speed to 20 miles until just as he reached the intersection. Whatever his speed, the question does not seem debatable that if he had looked when he should have done so he would have seen the plaintiff's car in time to have avoided the accident. The verdict of the jury is amply supported by the evidence and should not be disturbed.

Defendants offered the evidence of witness Schmidt, the farmer living in the house at the top of the hill, as to the rate of speed at which Osborn was driving as he passed that point, which was excluded by the learned district judge, and such ruling is assigned as error. In *Schwarting v. Ogram*, 123 Neb. 76, we held: "When the speed of

a motor vehicle is charged as negligence, it is proper to admit competent evidence of the speed at which it was being driven a few seconds before the collision," which was a correct statement of the law as applied to that case. It was said, however, in the opinion: "This question of the admissibility of the speed of a vehicle shortly prior to the time of the accident rests largely in the discretion of the court." A proper foundation was laid qualifying the witness to give his opinion and its admission would probably not have been reversible error, as was held in the *Schwarting* case, but it does not follow that its exclusion was reversible error under the circumstances of the present case. Before the ruling the witness had testified that Osborn was driving "slow" and the defendants had the benefit of that testimony; but, beyond that, Osborn had admitted in his statement that he was traveling 30 or 35 miles an hour, which finds some support in his testimony that as he neared the intersection he reduced his speed to 20 miles an hour. No offer was made of what it was expected to prove by the answer, but if we assume the witness would have fixed the rate of speed at 20, 25 or 30 miles an hour, it would not have aided defendants as Osborn had fixed it, and there was no attempt on the part of plaintiff to show the rate except by inference from the circumstances surrounding the collision. We, therefore, conclude that the exclusion of the evidence offered is not reversible error, if error at all.

Other questions are presented by the briefs, but we do not consider it necessary to discuss them. We find no error in the record and judgment of the district court is

AFFIRMED.