[No. 29300. Department Two. September 6, 1944.]

A. A. OLSON, *Respondent*, v. OSCAR ROSE, *Appellant*.[1]

*Henderson & McBee,* for appellant.

*Carl Christophersen,* for respondent.

MALLERY, J.—The plaintiff brought an action for damages arising out of an automobile accident. From a judgment in favor of the plaintiff, the defendant appeals.

[1] Reported in 151 P. (2d) 454.

The parties differ in their theories of the facts. The jury was entitled to believe that, between 1:45 and 2:00, September 20, 1941, the respondent Olson was a guest in the back seat of a car owned and driven by one J. Victor Falk, which left Aberdeen for Everett, Washington. They stopped at Tacoma for coffee for ten or fifteen minutes. At about 4:25, a collision occurred between the car in which respondent was riding and one driven by appellant at a point about one hundred feet north of the intersection of the Pacific highway and Auburn cut-off at Webb center, which is about ninety miles from Aberdeen. The elapsed travel time was between two hours and ten minutes and two hours and thirty minutes. At the place of the collision, the Pacific highway runs north and south. It is a four-lane highway, paved with concrete, two lanes for traffic in each direction, each ten feet wide. There is a four foot gravel strip in the middle of the highway. It is straight for some distance north and south and there is a slight upward grade toward the north. The day was clear and dry.

The car in which respondent rode had been traveling at a speed of about fifty miles per hour before it approached the intersection. It was slowed to about thirty-five miles per hour at the intersection and then speeded up again, but was still under fifty miles per hour at a point one hundred feet north of the intersection where it came into a head-on collision with appellant's car. At that point the speed limit for Falk's car was fifty miles per hour.

Appellant had been traveling south on Pacific highway. Both lanes of the highway in front of him were full of cars. He was following a car in the inside lane at a distance of about thirty-five to forty feet. He then suddenly and without warning drove his car diagonally across the gravel strip in the center of the highway and into the path of Falk's car.

Among other things. the appellant testified as follows:

"Q. Now, let us see if I have it right,—up here 200 feet from the intersection, or 100 feet from the scene of the accident you applied your brakes? A. I applied my brakes to slow down to 35 or 40 miles. Q. As you came down here

you were going slower? A. A great deal slowed down, yes. Q. You applied your brakes again? A. I applied my brakes to stop. The traffic ahead of me stopped. Q. This car swung this way? (Indicating). A. That is the idea. Q. You turned your wheels so you straightened it this way? A. Yes. Q. When you turned your wheels the car turned around like this? A. That is the way, yes. . . . Q. How far away from the accident were you when your car was in this position,—facing east,—your car is facing east. How far away from the point of collision were you? A. It must have been across two pavements. Q. Not across two,—you said you were 40 feet away from here,— from where the collision was. . . . A. Forty feet away. Q. Forty feet north? A. When I turned around? Q. When you turned around? A. No, I was about twenty-five. Q. You were a little closer then? A. Yes. Q. When the car was in this position it was stopped? A. Yes, it was stopped. Q. Practically stopped? A. Yes, practically stopped. Q. You stepped on the gas? A. No, I did not step on it. I just turned the wheel around. . . . Q. Both lines of traffic were full of cars? A. Yes, they were. Q. How close was the closest car? A. 35 or 40 feet. Q. In front of you? A. Yes. Q. You said traffic slowed down? A. Yes. Q. As you proceeded, I suppose traffic moved ahead out of the intersection? A. They came to a stop. Then I applied my brakes."

Later on, Rose testified as follows:

"Q. You turned the wheel and the car responded? A. Yes. Q. When you turned it around you had it under control? A. Yes. Q. Before you headed across the gravel strip you had the car under control? A. Well, I— Q. Yes or no. Did you have the car under control? A. Yes, it was. Q. It was not skidding then? A. No, it was not skidding then. Q. You had the car under control? A. Under control. Q. You said when you crossed this gravel strip and headed this way you were going ten miles an hour. A. No, I said around 10 or 12. Q. How fast were you going? A. Going about 10 or 12 miles across the pavement. Q. Did you put on the brakes then? A. No, I was going to cross. . . . Q. When you first saw Mr. Falk you were going south. A. I was not going south but I was faced that way. Q. Where was he? A. He was down below the blinker light. Q. When you saw Mr. Falk you left your side of the highway and turned in front of him and headed for the

ditch?  A.  Yes.  Q.  At that time the car was not skidding?
A.  No, not when I headed for the ditch.  Q.  How fast was
the Falk car coming?  A.  50 or 60 miles an hour."

██ The appellant presents his assignments of error
under six headings.  Under the first heading, appellant
claims the court's instruction No. 6 was erroneous.  We
quote his contention:

"In this instruction, the court limited the negligence of
the driver, Falk, to the sole and only question of the speed
at the point of the collision, and thereby limited the con-
tributory negligence of the respondent, Olson, which had
been charged in general terms, to that one act of negligence,
speed at the point of the collision."

The theory of the appellant, as alleged in his answer, was
that the respondent was negligent in failing to exercise
proper control over the operation of the automobile in
which he was riding.  His version of the facts was that
the Falk car was driven at an excessive rate of speed not
only at the point of collision, but also all the way from Aber-
deen to that point.  His theory of the law is that the re-
spondent should have made objections to the driver about
the manner of driving, not only at the point of collision, but
prior thereto.

He supported his version of excessive speed all the way
from Aberdeen by certain mathematical computations
based upon the distance traveled and the elapsed travel
time.  He argues that he was entitled to have the jury in-
structed to consider the speed, and the respondent's obli-
gation to warn the driver about it, previous to the time of
the collision.  With this theory we do not agree.  The evi-
dence with regard to the previous speed was material and
therefore admissible for the very limited purpose of affect-
ing the credibility and accuracy of the testimony touching
the speed of the automobile at the time of the collision.  It
may be conceded that a jury might well be affected in their
finding upon that question by the previous conduct of the
parties, but the fact still remains that they were only called
upon to determine the question of speed at the time of the
collision, even though they had a right to consider previous

rates of speed as a circumstance among others as worthy of some consideration in arriving at their finding.

This evidence was all before them and it must be presumed that they gave that factor the weight to which they deemed it to be entitled. It would have been error to have gone further in the matter by instructing them that they should find that excessive speed at a time prior to the collision would constitute negligence at the time and place of collision.

■ Under his second heading, appellant contends that the court erred in giving instruction No. 8, in which the jury were told that the driver upon the wrong side of the highway has the burden to justify the violation of the law of the road and establish that he was free from fault.

The decisions are replete with instances where violations of rules of the road are not necessarily proximate causes of accidents. Being on the wrong side of the road is not one of such. It makes a *prima facie* showing of proximate cause, as a matter of law. To avoid this effect, it must be shown to have occurred without fault, unless it be defensible under the last clear chance doctrine. This does not constitute a shifting of the burden of proof, but involves only the need for a defense against a *prima facie* case. *Shelley v. Norman*, 114 Wash. 381, 195 Pac. 243. The instruction was not error.

■ Under headings number three, four, and five, appellant contends that it was error for the court to instruct the jury as to the law in case they found that appellant intended to make a left turn. The court made it clear that this instruction did not apply if they found that the appellant got on to the wrong side of the road as a result of skidding. We quote from appellant's brief: "There was some question by the evidence as to whether or not the appellant's car skidded and just how and in what manner it got over on the wrong side of the highway." Without reviewing the evidence, it may be said that the instruction was not given out of a clear sky but touched an hypothesis the jury might well have accepted. It was not error.

Under appellant's heading number six, he claims error in the court's refusal to give appellant's requested instruction No. 20 which fixed a maximum lawful speed for automobiles traversing the intersection at thirty-five miles per hour. It is his contention that he had the right to have the jury told that the driver, Falk, was driving at an unlawful rate of speed if he traversed the intersection at a rate of more than thirty-five miles per hour. This is essentially the same contention as made in his first assignment of error and the ruling is the same.

The judgment is affirmed.

BLAKE and ROBINSON, JJ., concur.

MILLARD, J., concurs in the result.

SIMPSON, C. J. (concurring in the result)—While I concur in the result reached by the majority, I am unable to join in holding that evidence relative to the speed of respondent's car in traveling from Aberdeen to the scene of the accident was material and admissible. This court settled the question in *Hutteball v. Montgomery*, 187 Wash. 516, 60 P. (2d) 679. I quote from the cited case as follows:

"Assignments 2 and 3 relate to the rejection of testimony offered as to the estimated speed of respondents' car at several different points a number of miles from the scene of the accident, neither of the witnesses having seen either car until after the collision; and also the rejection of testimony offered as to the character of the country over which the respondents traveled the morning of and prior to the accident. The argument upon these two matters together on behalf of appellant is that the testimony rejected would have shown that respondents had driven 414 miles that morning in nine and one-half hours, a general average of forty-six miles an hour, and that the first part of the morning's journey was through hilly country, where, presumably, they would not, or did not, drive as fast as later on; and that this, together with testimony offered of the estimated, excessively great speed of respondents' car later on, nearer the scene of the accident, would justify the jury in reasonably inferring that the respondents were driving in excess of forty-six miles an hour at the time of the collision.

"The testimony offered was entirely too uncertain and remote. The rejection of it did not constitute error, prejudicial or otherwise. On the question of remoteness, some discretion must be vested in the trial court, and its ruling should not be disturbed unless clearly wrong. *Showers v. A. H. Jones Co.*, 126 Neb. 604, 253 N. W. 902. There was no abuse of discretion here. Appellant's authorities, including one furnished since the argument, have been examined, and, without discussing them, we say that they do not, in our opinion, sustain the claim that the court committed error in the rejection of this testimony."