FRED BRITTON, ADMINISTRATOR OF THE ESTATE OF HERBERT BRITTON, DECEASED, APPELLANT, V. IVOR SAMUELSON, APPELLEE.

23 N. W. 2d 267

Filed May 31, 1946. No. 32093.

*Bruckman & Dunmire,* for appellant.
*Kirkpatrick & Dougherty,* for appellee.
Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE,

YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an action for damages, brought by a father as administrator of the estate of his son, under sections 30-809 and 30-810, R. S. 1943, known as Lord Campbell's Act, alleging that his son met his death as the result of the wrongful and negligent act of defendant's employee. At the close of plaintiff's evidence, the court sustained motion for a directed verdict for the defendant. Motion for new trial was overruled, and plaintiff appealed.

The petition alleged that Fred Britton, plaintiff, was administrator of the estate of his son, Herbert Britton, deceased, who left as his heirs his father and mother, and that the action was brought for their exclusive benefit; that the defendant had in his employ Oscar Bengston, who was to drive the truck to a place four and a half miles southeast of the town of Trumbull and get a load of hay, and defendant employed deceased to go along and help him; that after the truck had been loaded with hay, and they had started back, some of the hay slipped off, and was then reloaded, but not tied down, and that the deceased was ordered and directed by said Oscar Bengston to ride on top of the load to weight it down and prevent it from slipping and shaking off; that notwithstanding the dangerous position in which the deceased had been placed, the said Bengston carelessly, negligently, and wantonly drove said truck at such a rate of speed as to cause the load to rock and sway, and Herbert Britton, deceased, was thrown from the top of the load to the ground, a distance of ten feet, and sustained a broken neck, from which he died almost instantly; that the death was caused by the carelessness, negligence, and wrongful acts of said Oscar Bengston in the management and operation of the truck, without any contributing fault or negligence on the part of deceased, for which death the plaintiff asks damages for the benefit of the father and mother as next of kin.

The defendant filed answer, admitting the formal parts of the petition, and admitting that deceased, Herbert Brit-

ton, and Oscar Bengston were his employees at the time and place the death occurred, and denying every other allegation. The answer further alleged that the accidental death was due to and caused by the heedless, careless, reckless, and grossly negligent acts of the deceased, which were the sole and proximate cause of the accidental injuries and death.

It is further alleged that the deceased voluntarily, and at his own request, assumed a position upon the load of hay, knowing that hay had previously slipped off from said load, and that he assumed all the risks and dangers connected with the operation of the truck. It is further alleged in the answer that deceased and Oscar Bengston were engaged in a joint enterprise for the benefit of the defendant, for a definite wage, to obtain a load of hay, and the negligence, if any, of the defendant, which is denied, is imputed to the plaintiff and the plaintiff's intestate. In reply, the plaintiff filed a general denial.

The plaintiff called as his first two witnesses the defendant and his hired man, Oscar Bengston. Their evidence disclosed that defendant was engaged in the lumber, implement, hardware, and grain business; that defendant conducted a farm, and needed a load of hay to feed sheep that were ready to be shipped the following Monday; and that defendant employed Herbert Britton that afternoon to go with his hired man to get this load of hay. Britton and Bengston left the village of Trumbull about three o'clock in the afternoon, on a very cold day, in a Ford truck. The truck was what is known as a four-ton 1935 truck, the box of which was about three feet high, seven feet wide, and fourteen feet long. Both the hired man and the deceased rode in the cab of the truck out to the field 4½ miles away, where they loaded on about 800 to 1,000 pounds of wild prairie hay. They brought no rope to tie around the load. They started back over the same road, with the deceased riding in the cab, and had driven about three-fourths of a mile when they discovered that the top of the hay had slipped off. They drove back to get it, and the deceased

got up on the load to spread it and tramp it down, and when it was all reloaded deceased said he would stay on top of the load. The hired man told him it was too cold, and Britton replied that he would sit down in the hay and cover up and would be all right. Bengston told Britton that he would leave the window on his side of the cab open and if he got cold he could holler. He then started the truck and drove at not over 25 miles an hour. There was no particular bumping or jerking or swerving, but there was some "washboard" condition of the road in places. After driving back to within about two miles southeast of Trumbull, Bengston stopped and called back to Britton, and received no answer. Looking out he found that the top of the load had again slipped off back about 40 rods. He turned around and went back, and found Britton lying on the edge of the road north of the pile of hay. He was bleeding from the nose and mouth. Bengston called him by name and he did not answer; he picked him up, put him in the cab, and drove back to the lumberyard office, where Britton was carried into the office and was laid down. A doctor was immediately called from Hastings, and upon arrival found that the neck was broken at the base of the skull, and that apparently death was almost instantaneous.

The plaintiff assigns as error that the court erred in sustaining the motion of defendant at the conclusion of plaintiff's evidence to take the case from the jury and direct a verdict for defendant, as such ruling of the court was contrary to law and contrary to the evidence.

In this case it appears from the evidence that the Ford truck and the hay being hauled belonged to the estate of Frank W. Samuelson, father of defendant, who was administrator of his father's estate, and as administrator he had taken over the farming operations and business lines of his father,—although the 351 head of sheep had been purchased by the defendant personally. Therefore, as this was a suit for money, it could not be brought against the administrator of the Frank W. Samuelson estate, under section 30-801, R. S. 1943, but it was brought against Ivor

Samuelson personally, as he was personally conducting the sheep-feeding operations. See Drainage District v. O'Neill, 109 Neb. 552, 191 N. W. 685; Hoover v. Haller, 146 Neb. 697, 21 N. W. 2d 450. Doubtless evidence was taken on this feature of the case in the direct and cross-examination, because of a possible liability of the insurance carrier on the truck.

In negligence cases such as this, the burden of proof is always upon the plaintiff to show that death was caused by some negligent act directly attributable to the defendant. Thompson v. Young Men's Christian Ass'n, 122 Neb. 843, 241 N. W. 565; Mischnick v. Iowa-Nebraska Light & Power Co., 125 Neb. 598, 251 N. W. 258.

The petition alleges that the truck was negligently and wantonly driven at such a rate of speed as to cause it to rock and sway and to throw deceased from the top of the load to the ground. The testimony fails to support the charge of excessive speed of the truck; the same driver appeared to have driven the same truck over the same road at about the same speed he had used in going out to the field to get the hay. Driving in that same way, the top of the load slipped off, as it had slipped off just a few moments before. The deceased had knowledge of all these facts, and such evidence does not show actionable negligence.

In the case of Bowers v. Kugler, 140 Neb. 684, 1 N. W. 2d 299, it was said that negligence is not presumed, and that the mere happening of an accident does not prove negligence.

Plaintiff argues that, as no one saw the deceased from the time he went on the load until after the accident, therefore we must presume he was exercising ordinary care for his own safety, and cites: "The presumption of due care arising out of the natural instinct of self-preservation is not evidence, but a mere rule of law, and obtains only in the absence of direct or circumstantial evidence justifying reasonable inferences one way or another upon that subject; when such evidence is produced the presumption disappears and is not entitled to be considered." Eggeling v.

Chicago, R. I. & P. Ry. Co., 119 Neb. 229, 231 N. W. 152.

However, in the case at bar there is direct evidence that the deceased voluntarily took his position on top of a load of wild hay which he knew was not tied down, and which hay had just been reloaded because it had slipped off.

As to the alleged negligence in not taking along ropes to securely tie down this small jag of wild hay, there does not seem to be any evidence to show that it is the universal custom to so tie down every small load of hay.

" * * * negligence will never be presumed from the fact of injury or death. Negligence, to support a verdict, must be established either by direct proof or by physical facts of sufficient potency from which a reasonable inference of the same may arise. Neither can negligence be based upon surmise, speculation, or conjecture." Bernhardt v. Chicago, B. & Q. R. R. Co., 132 Neb. 346, 272 N. W. 209.

The plaintiff alleges in his petition, as an act of negligence, that "the said Herbert Britton, was ordered and directed by the said Oscar Bengston and was placed and required to ride on top of the load to weight it down to prevent it from again slipping and shaking off." We fail to find any evidence in the record supporting this charge of negligence. The evidence is to the effect that the deceased took the position on top of the load of hay on his own volition; that he was asked to come down and ride in the cab, but declined to take a safe place to ride.

We are satisfied from a reading of the record in this case that the trial judge did not err in directing the jury to return a verdict for the defendant and thereupon dismissing the case. It is supported by the law and the evidence.

AFFIRMED.