OSCAR MEYER, APPELLEE, V. PLATTE VALLEY CONSTRUCTION COMPANY ET AL., APPELLANTS.

25 N. W. 2d 412

FILED DECEMBER 27, 1946. No. 32113.

*Gross & Welch* and *Harold A. Prince,* for appellants.

*Clark J. Mingus, B. J. Cunningham,* and *A. J. Luebs,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and POLLOCK, District Judge.

CHAPPELL, J.

Plaintiff brought this action to recover for personal injury and property damage resulting from a collision on September 13, 1944, between his Ford farm truck traveling east, and defendant's Chevrolet gravel truck traveling north, at an intersection of two ordinary graveled country roads near the Grand Island Ordnance Plant. Upon trial to a jury, plaintiff was awarded a verdict for $1700, upon which judgment was entered. Defendant's motion for new trial was overruled, and it appealed to this court, assigning as error substantially that the trial court erroneously overruled defendant's motion for a directed verdict made at the conclusion of plaintiff's case which was renewed at the conclusion of all the evidence, and erred in submitting the case to the jury. It is argued that plaintiff's negligence was more than slight as a matter of law, and that there was no evidence of any negligence on the part of defendant; therefore, the evidence was insufficient to support a verdict and judgment. It is also separately assigned that the trial court erred in giving instructions numbered 1, 3, and 8. We find that defendant's assignments of error cannot be sustained.

The theory of plaintiff's case, as reflected in his petition, was that defendant's driver was negligent in that he failed to keep a proper lookout, failed to have defendant's truck under control, failed to stop in time to avoid a collision, negligently drove his truck into the intersection after plaintiff had lawfully entered the same, and drove at an excessive rate of speed, which negligence was the proximate cause of the accident. Defendant, for answer, admitted that an accident occurred, at or about the time and place claimed by plaintiff, but denied that defendant was negligent and alleged that the accident and resulting injuries and damages, if any, were due solely to plaintiff's own contributory negligence, which was more than slight. Plaintiff's reply, in

substance, denied that there was any contributory negligence on his part.

Whether the trial court should have directed a verdict for defendant depends primarily upon direct evidence together with physical facts and circumstances about which there is no substantial dispute, to which we must apply well-settled principles of law. It has long been the rule, only recently reaffirmed by this court, that "A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." Halliday v. Raymond, *ante* p. 179, 22 N. W. 2d 614.

The latter case also approved and applied the rule that "Where different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury, but where the evidence shows beyond reasonable dispute that the plaintiff's negligence is more than slight as compared with the defendant's negligence, then it is proper for the trial court to instruct the jury to return a verdict for the defendant." In that connection, however, the rule is "If contributory negligence is relied upon by defendant as an affirmative defense, the burden is upon him to prove it by a preponderance of the evidence pertinent to that issue contained in the whole record, except in so far as the same may appear in evidence adduced for the plaintiff." Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175.

It is the law generally that negligence is never presumed, and cannot be inferred from the mere fact that an accident happened. The burden of proof is upon the plaintiff to show, by a preponderance of the evidence, that an accident was proximately caused by some negligent act charged, directly attributable to defendant, and to support a verdict, negligence must be established, either by direct proof or by

physical facts or circumstances of sufficient weight from which a reasonable inference of the same may arise. Britton v. Samuelson, *ante* p. 318, 23 N. W. 2d 267.

We have recently reaffirmed that "Circumstantial evidence can be sufficient to sustain a verdict depending solely thereon for support if the circumstances proved by the evidence are of such a nature and so related to each other that the conclusion reached is the only one that can fairly and reasonably be drawn therefrom." Halliday v. Raymond, *supra.* See, also, Anderson v. Interstate Transit Lines, 129 Neb. 612, 262 N. W. 445. However that may be, we are not required to rely solely upon the latter rule in the case at bar, because from the record before us it appears that plaintiff adduced not only direct proof, but also physical facts and circumstances of sufficient weight from which negligence of the driver of defendant's truck as charged might reasonably be inferred, which distinguishes Britton v. Samuelson, *supra,* and Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673, relied upon by defendant, to support his contention that the evidence is insufficient to support the verdict and judgment. Rather the case comes within the rule that "Where the facts are disputed, it is solely the province of the jury to determine the same; and, whether the facts be disputed or undisputed, if different minds might honestly draw different conclusions from them, the case is properly left to the jury." Ogden v. Sovereign Camp, Woodmen of the World, on rehearing, 78 Neb. 806, 113 N. W. 524.

Defendant argues that the two trucks arrived at the intersection at approximately the same time. Therefore, defendant coming from the right had the right-of-way and was in a favored position, from which he concludes that Bergendahl v. Rabeler, *supra,* and Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596, govern the case, requiring the court to find that plaintiff was guilty of negligence more than slight, as a matter of law. In the latter case, it was held: "If the driver of an automobile entering an intersection looks for approaching vehicles but fails to see one

which is favored over him under the rules of the road, he is guilty of contributory negligence sufficient to bar a recovery as a matter of law." On the other hand, plaintiff therein had the right-of-way in the absence of evidence that defendant entered the intersection first, and being in a favored position prevailed by reason of the rule that "When the driver of an automobile entering an intersection looks but fails to see an approaching automobile not shown to be in a favored position, the presumption is that the driver of the approaching automobile will respect his right of way, and the question of his contributory negligence in proceeding to cross the intersection is a jury question." We call attention to the fact that in Bergendahl v. Rabeler, *supra*, the court found as a matter of law that defendant, who prevailed, had the right-of-way and was in a favored position at the intersection. However, in Showers v. Jones Company, 126 Neb. 604, 253 N. W. 902, is was pointed out that under the evidence there was a warrantable inference that plaintiff entered the intersection first, had the right-of-way, and was in a favored position under circumstances very similar to those at bar. Therein the issues were submitted to a jury. It awarded plaintiff a verdict and we affirmed the judgment.

The query then is which premise in Whitaker v. Keogh, *supra*, controls in the case at bar, and that depends upon the factual question of whether plaintiff or defendant had the right-of-way at the intersection. Section 39-728, R. S. 1943, provides: "Motor vehicles traveling upon public highways shall give the right of way to vehicles approaching along intersecting highways from the right, and shall have the right of way over those approaching from the left when said vehicles shall reach the intersection at approximately the same time. *In all other cases the vehicle reaching the intersection first shall have the right of way.*" (Italics ours.) That defendant's driver was on the right is not in dispute. However, in the light of the latter sentence in the right-of-way statute, we cannot under the evidence before us find as a matter of law that defendant had the right-of-

way as he would have us do. Since the evidence warranted a reasonable inference that plaintiff entered the intersection first, whether he had the right-of-way over defendant who negligently violated that right, was a question for the jury to decide under appropriate instructions of the trial court.

There are other statutes also having application to the case at bar. Secton 39-747, R. S. 1943, provides: " In crossing an intersection of highways * * * the driver of a vehicle shall at all times cause such vehicle to travel on the right half of the highway unless such right half is obstructed or impassable."

Section 39-723, R. S. 1943, provides: "No person shall operate a motor vehicle on any highway outside of a city or village at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person, nor in any case at a rate of speed exceeding sixty miles per hour between the hours of sunrise and sunset, and fifty miles per hour between the hours of sunset and sunrise; * * *."

Section 39-7,108, R. S. 1943, in effect at the time of the collision, also provided: " (a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. (b) The following speeds shall be prima facie lawful, but in any case when such speed would be unsafe, they shall not be lawful; * * * (3) sixty miles per hour between the hours of sunrise and sunset and fifty miles per hour between the hours of sunset and sunrise upon any highway outside of a city or village. (c) The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection * * * or when special hazard exists with respect to * * * other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the high-

way in compliance with legal requirements and the duty of all persons to use due care; * * *."

In the light of previous discussion then, we will substantially review the evidence. There is competent evidence in the record to support the following summary of the facts: Plaintiff's truck, which as loaded weighed approximately five and one-half tons, approached the intersection from the west on the right side of the road, five or six feet from the south edge of the graveled portion. The graveled portions of the roads north and south and east and west of the intersection were twenty-five feet wide. There were cornfields grown to maturity, both to the right and left along the sides of the east and west road, which obstructed most of the view by drivers of vehicles approaching the intersection from the west, both to the north and south, up to a point near the fence lines. The roads were level for some distance as they approached the intersection, and otherwise the view was not obstructed.

Plaintiff had traveled over the road previously, and was familiar with conditions at the intersection. Before approaching the intersection he was driving from thirty to thirty-five miles per hour, but, knowing it to be a bad corner, he slowed down to fifteen miles per hour as he approached the intersection. When he was about eleven feet from the west fence line, he looked south, from which point he could see approximately two hundred fifty feet, but observed no vehicle coming from that direction. He then looked to the north, from which direction traffic approaching on the right side of the road would be nearest to him, and observing nothing, he proceeded in a straight line across the intersection, without looking to the south again, and did not see defendant's truck before the collision. A man riding with plaintiff did not observe defendant's truck either, but testified that plaintiff was driving on the right side of the road, that his rate of speed before approaching the intersection was from twenty-five to thirty-five miles per hour, and that he slowed down before reaching it.

Defendant's gravel truck, which as loaded weighed approximately nine tons, came from the south and entered the intersection ten feet from the east edge of the north and south graveled road, where at a point six feet north of the south edge of the east and west graveled road, its front end collided with plaintiff's truck, at the right rear wheel and just above it on the projecting body. Sixteen rivets, larger than a lead pencil, were sheared from the wheel, the housing thereon was locked, the steel frame of the body above it was bent in toward the front, and the floor boards were splintered and broken at that point. Plaintiff's truck after being struck, came to rest approximately sixty-two feet northeast of the point of impact. It rolled completely over, and landed right side up, facing south, with its front wheels in the ditch and its rear end near the north fence, a few feet east of the northeast intersection corner post. The top of the cab and right door were smashed down and the right fender was crumpled. A piece of farm machinery in the truck was thrown northeast over the north fence, east of the intersection into the ordnance plant property fifteen feet north of the point where the rear end of the truck came to rest. Sacks of wheat, weighing as much as one hundred pounds or more, were thrown out of the truck northeast to a point approximately thirty feet east of where it came to rest on the north side of the road. Plaintiff, injured and in shock, was removed to a hospital in Grand Island, where he remained until the next day, after which he was convalescent at home for some time. He claimed at the trial that he was still suffering from pain and disability.

Defendant's truck was driven by a young man seventeen years of age, who had been employed by defendant as a gravel truck driver three or four weeks before the accident. During that period, or a large part of it, he, with others, had been hauling gravel over that same north and south road from the Platte River toward the north, past that intersection, into the ordnance plant. When approaching the intersection from the south, if on the right side of the road,

vehicles coming from the west could be seen for some distance west of the fence line and through the entire distance, from the fence line to and across the intersection.

The gravel truck had no bumper, fenders, lights, hood, or grill, but there was a cross-bar over the front of its radiator. The truck's heavy channel iron frame projected out in front of the vehicle. The jury examined its frame and body during the trial. Following the impact, the gravel truck, after dumping its load of gravel to the east of it, came to rest on its right side in the ditch in the northeast corner of the intersection just west of the corner post, with the front end facing the center of the intersection, toward the southwest, twenty-six feet from the point of impact. As disclosed by exhibits 11 and 15, photographs of the trucks, the honeycomb of the radiator on the gravel truck does not appear to be greatly damaged, but its cross-bar was bent upward, the left side of its shell was bent to the right, its protecting frame was bent in at the bottom with its braces torn from the frame. The heavy steel frame of the truck was mashed to the right on both sides, with the motor torn loose from its moorings. The fact is, it appears that the whole front end of the gravel truck, clear back to the body, was practically demolished. The front axle, with the two front wheels still upon it, was torn completely loose from the gravel truck and thrown into the highway approximately one hundred fifty feet north of the corner. Defendant's driver was thrown out of the cab to the east and killed almost instantly.

As the gravel truck proceeded north approximately six hundred sixty feet south of the intersection, a farmer, who was operating a tractor in a field east of the north and south road, saw the truck traveling north, and on being qualified as having an opinion, testified that at that point the truck was traveling at a speed of between thirty-five and forty miles per hour. The admissibility of such evidence, in cases similar to the one at bar, was approved in Schwarting v. Ogram, 123 Neb. 76, 242 N. W. 273, and the propriety of its admission or exclusion was discussed in Showers v.

Jones Company, *supra*. Otherwise, there is no evidence of the speed of the gravel truck except the physical facts and circumstances. Nevertheless in the situation presented here, we cannot invade the province of the jury and conclude as a matter of law that defendant's driver was not driving at an excessive rate of speed at the point of collision, as defendant would have us do. Sgroi v. Yellow Cab & Baggage Co., 124 Neb. 525, 247 N. W. 355.

There was no evidence of skid marks before the impact. However, there were skid marks observable after the impact. In that connection, the sheriff appeared upon the scene shortly after the accident, made investigation, took measurements, prepared and preserved notes thereof, and forwarded an accident report to the state. He testified that there were skid marks at the intersection traceable to the respective trucks. They began at a point six feet north of the south edge of the east and west graveled portion of the road and ten feet west of the east edge of the graveled portion of the north and south road. In other words, there is competent evidence that defendant's driver was ten feet from the east edge of the north and south road when the truck he was driving entered the intersection and collided with the rear end of plaintiff's truck when it was six feet north of the south edge of the east and west road. All of which, together with the other evidence, we believe would justify a reasonable inference not only that defendant was on the wrong side of the road, but that plaintiff was driving on the right side of the road, and had the right-of-way, having entered the intersection first.

Defendant argues that plaintiff made a statement to its investigator a few days after the accident which was contrary in some material respects to his evidence at the trial; therefore, plaintiff's evidence should not be given any credence. The statement, offered in evidence by defendant, was written by the investigator and signed by plaintiff. Defendant relies upon Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W. 2d 381, and cases of similar import, which are clearly distinguishable. The statement was not given or

taken under oath as evidence in this or any other action. Both plaintiff and his wife, who were present when the investigator for defendant wrote the statement on his portable typewriter in their home, emphatically deny that the statements were ever made as written by the investigator. The jury evidently believed them, as they had a right to do, since the statement was at most an admission against interest. The applicable rule is that extrajudicial statements of fact made by a party relating to matters material to the issues in a controversy are available to the adverse party in a trial thereof as admissions against interest or for impeachment. Such statements are, however, not conclusive but may be explained, rebutted, or contradicted, and thereafter are to be given such weight as the trier of facts deems them entitled. 31 C. J. S., Evidence, § 272, p. 1023; § 273, p. 1027; § 276, p. 1028; § 380, p. 1164. See, also, Hinnenkamp v. Metropolitan Life Insurance Company, 134 Neb. 846, 279 N. W. 784; Havlik v. Anderson, 130 Neb. 94, 264 N. W. 146; Miller v. Nicodemus, 58 Neb. 352, 78 N. W. 618.

From all the foregoing, we conclude that the question of negligence and contributory negligence was for the jury, and we turn to the question whether instructions numbered 1, 3, and 8 were erroneously given.

Instruction No. 1 presented the issues of negligence on the part of defendant's driver substantially as alleged in plaintiff's petition heretofore summarized. In that regard, defendant argues that the instruction was prejudicially erroneous because there was no competent evidence supporting any of plaintiff's five alleged acts of negligence. As heretofore observed, with that we cannot agree. We conclude that the direct proof, together with the physical facts and circumstances appearing, is such that the jury could reasonably find or infer that defendant's driver was guilty of any one or all of such claimed acts of negligence. It follows that instruction No. 3 was not erroneously given, because its alleged erroneous quality was admittedly entirely

dependent upon a finding that instruction No. 1 was erroneously given.

Instruction No. 8, about which defendant complains, reads as follows: "The right-of-way which is given to one under the statute is not an absolute right which may be exercised under all conditions, but if to the one to whom the right-of-way is granted, in the exercise of ordinary care, it appears that to insist upon the right-of-way would probably result in a collision, it would be the duty of such .person to use ordinary care to avoid a collision even to the event of yielding his right-of-way, and his failure to do so, under those conditions, would be evidence of negligence on his part."

Instruction No. 6, given by the trial court, correctly summarized the statutory rules relating to right-of-way. We are unable to observe any merit in defendant's contention that instruction No. 8 had no support in either the pleadings or the evidence. We conclude that under the evidence and in the light of all the instructions, the giving of instruction No. 8 could not be error prejudicial to defendant, because it not only correctly reflects the law but could as well apply to plaintiff as defendant.

We conclude that the verdict, the amount of which is not in dispute, is amply supported by the evidence; that there is no error in the record prejudicial to the defendant; and that the judgment should be and hereby is affirmed.

AFFIRMED.