MANLES ACREE, APPELLEE, V. ROY NORTH ET AL.: UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED MARCH 27, 1923. No. 22294.

1. **Assault and Battery:** ABETTOR. "In an assault and battery, not only he who is the actor or actual perpetrator of the offense, but he also who, being present when the act is done, aids and abets therein, is a principal and liable as such at the suit of the injured party." *Cooney v. Burke,* 11 Neb. 258.

2. ——: INSTRUCTION. Evidence examined, and *held* an instruction embodying the above doctrine properly given.

3. **Appeal:** DAMAGES: INSTRUCTION. Where, in an instruction upon the measure of damages, the jury are inadvertently told that they might compensate plaintiff for (among other things not complained of) "loss of time, *if any * * * has been shown by the evidence,"* when it appears that plaintiff made no claim for loss of time, either in his petition or in the evidence, it will be *held* not to be reversible error, nor to require a remittitur of the judgment, where it is reasonably certain the jury were not misled thereby, and the amount of the judgment can be sustained on other elements of damage not objected to, and the defeated party makes no complaint of the amount.

Acree v. North.

4. **Assault and Battery:** REFUSAL OF INSTRUCTION. In a civil action for assault and battery, where the evidence conclusively shows that the defendants made a voluntary attack upon plaintiff without provocation, and were the sole active aggressors throughout the assault, the plea of self-defense has no proper place in the transaction, and an instruction tendered looking to the exoneration of defendants on that ground is properly refused.

5. **Evidence:** ADMISSIBILITY: PRIVILEGED COMMUNICATIONS. Where it appears from the evidence that a physician, in his professional capacity, treated the plaintiff for injuries sustained to his face and jaw from an assault by defendants, and that prior thereto he had seen plaintiff at different places on the street, but where it further appears that on one or more occasions prior to seeing him on the street he had also, in his professional capacity, treated the plaintiff for facial paralysis, such physician will not be permitted to testify, over the objection of plaintiff that the same would be a violation of the privilege existing between physician and patient, what the difference was, if any, in the appearance of plaintiff's jaw and face at the time he treated him for his injuries from the assault above mentioned and the time he had seen him on the street, at least until, if at all, it is first shown that the witness is able to and will separate and discriminate the knowledge and information gained in his professional capacity from that gained in a nonprofessional capacity and base his answer solely upon the latter, and the witness not having thus qualified himself, the objection was properly sustained.

APPEAL from the district court for Cheyenne county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*C. A. Magaw, Douglas F. Smith* and *Thomas F. Hamer,* for appellant.

*Halligan, Beatty & Halligan, contra.*

Heard before MORRISSEY, C. J., ROSE, GOOD and ALDRICH, JJ., RAPER and TROUP, District Judges.

TROUP, District Judge.

Action on the part of plaintiff, Manles Acree, against defendants, Union Pacific Railroad Company, John Schell, and Roy North, to recover damages for assault and battery and false arrest.

For first cause of action plaintiff, in substance, alleges that defendants Schell and North were employed by de-

fendant railroad company as private detectives to guard the grounds and trains of defendant company in and about the town of Sidney, Nebraska, to prevent depredations thereon and remove trespassers therefrom; that on July 3, 1920, the plaintiff, a farm-hand living three miles east of Sidney, drove into the town in his automobile, placed the same in a garage, remained in town until about 10 o'clock p. m., at which time, leaving his car in the garage for repairs, he started to walk on the Lincoln highway toward his home; that plaintiff had proceeded on said highway to a point near the east corporate limits of the city, when defendants Schell and North, being under the impression that plaintiff had committed or was about to commit some trespass upon the property of the railroad company, made an assault upon the plaintiff, beating and striking him upon the head and face, knocking him to the ground several times, striking and beating his jaw with a revolver and cutting numerous gashes upon his head and face; that on account thereof plaintiff suffered great bodily pain and injury, was compelled to pay a physician $50 for treatment of his wounds, all to his damage in the sum of $2,550.

For his second cause of action plaintiff reavers the substance of the facts above stated, and alleges that after the commission of the assault, as above set forth, defendants Schell and North did unlawfully and forcibly arrest said plaintiff, forcing him to give bond for his release, to his damage in the sum of $450, for all of which plaintiff prays judgment for $3,000.

The defendants each file separate answers. The defendant railroad company, for its answer, admits that defendant Schell was employed by the defendant company to guard and protect its property in the yards in and about Sidney, but denies each and every other allegation in plaintiff's petition.

The answer of defendant Schell is identical in substance to that of the railroad company.

The answer of defendant North denies that he was in

Acree v. North.

the employ of defendant railroad company at the time
in question, and denies each and every other allegation
in plaintiff's petition, except such as may be admitted
in his answer.  Further answering, defendant North
alleges that on the night stated he was in company with
defendant Schell, who at that time was engaged as night
watchman for defendant company, and that at the time
referred to this defendant and Schell saw plaintiff loiter-
ing in a suspicious manner upon the right of way of
defendant railroad company; that, as defendants
approached plaintiff, plaintiff attempted to escape by
running, and, defendants giving chase, commanded
plaintiff to halt, whereupon plaintiff drew a pistol and
pointing same at Schell, this defendant fearing for. his
life, struck plaintiff, but only with such force as was.
necessary to prevent great bodily injury to said Schell.

Plaintiff's several replies to the respective answers deny
each and every allegation therein contained, except only
such as are admissions of allegations of plaintiff's petition.
A trial before a court and jury resulted in a verdict and
judgment for plaintiff for $3,000.  The defendant railroad
company only appeals.

Except that defendant North was not in the employ of
defendant company, but was a volunteer on the occasion
in question, we think it fair to say that the allegations
of plaintiff's petition are well sustained by the evidence
as to both causes of action.  We think it also fair to say
that from the evidence of defendant Schell and North it
appears that, as they were passing down the railroad track
on the night referred to, they saw three men in the vicinity
of the railroad company's cars containing merchandise,
acting in a suspicious manner, and, as defendants ap-
proached, one of the three escaped in a southeasterly
direction, the other two in a slightly different direction,
and it was while defendants were returning from a chase
of the latter two that they discovered plaintiff walking
eastward on the Lincoln highway, and, supposing him to
be the first of the three who escaped, accosted him, and

the assault quickly followed substantially, as plaintiff alleges. The plaintiff, however, did have a pistol in his possession at the time of the assault, which he says he took from his car in the garage as he was about to start for home, and which he says he held in his hand by his side as he proceeded homeward on the highway.

The defendant presents several assignments of error, the first of which is to an instruction designated as No. 9, wherein the court told the jury, in substance, that even if they should find from the evidence that defendant Schell did not actually strike plaintiff, yet if he was present and did aid, abet and encourage defendant North to commit the assault, and that at the time of so doing he was acting within the scope of his employment with the railroad company, as explained in other instructions, then Schell and the railroad company would be equally liable with defendant North. The defendant does not criticise this instruction as a correct statement of the law, but claims there was no place for it in the evidence. To this, of course, we cannot agree. The plaintiff testified that Schell actually struck him. While defendants deny this, they both testify that Schell climbed over the railroad fence, intercepted the plaintiff as he was walking on the public highway, commanded him to stop and throw up his hands, and, while North immediately set upon him and beat him, Schell stood by with a flashlight in one hand and a loaded revolver in the other, and after the assault took hold of plaintiff and, together with North, forced him to the courthouse, where, as the evidence shows, both Schell and North insisted that he be thrown into jail, and only upon giving bond was he released. This was amply sufficient in fact to justify the instruction. So, also, was it sufficient in law. "In an assault and battery, not only he who is the actor or actual perpetrator of the offense, but he also who, being present when the act is done, aids and abets therein, is a principal and liable as such at the suit of the injured party." *Cooney v. Burke,* 11 Neb. 258.

Objection is also made to an instruction pertaining to

Acree v. North.

the measure of damages, wherein the court told the jury it might compensate plaintiff for (among other things not complained of) "loss of time, if any * * * has been shown by the evidence." The plaintiff made no claim for loss of time either in his petition or in the evidence, and this clause evidently slipped into the instruction inadvertently. We have some doubt if its insertion is such a fault as to be characterized as being even technically erroneous. The jury were told it might compensate for loss of time, *if any has been shown by the evidence.* The plain inference follows that, if there was no loss of time shown by the evidence, then it might not compensate for that. It is reasonably certain the jury were not misled, and that it allowed nothing therefor. Certainly the inadvertence is not such error as to require a reversal of the case, nor do we think even a remittitur from the judgment. The amount, at most, would be comparatively inconsequential. The amount of the verdict can be sustained on other elements of damage not objected to, and the defendant makes no complaint as to the amount. See, upon this point, *Chicago, R. I. & P. R. Co. v. Archer,* 46 Neb. 907.

Defendant complains of the refusal to give an instruction tendered, to the effect that if the jury found certain facts not to exist the defendant Schell and the railroad company would not be liable. The court had already instructed the jury, as to the same state of facts, to the effect that if they found said facts to exist they might find defendants Schell and the railroad company liable. It can hardly be said to be necessary to repeat the same proposition in the negative form.

Another instruction tendered by all the defendants and calculated to apply to all, but refused by the court, invoked the defense of self-defense. Self-defense is an affirmative defense, and under a general denial only evidence of justification is admissible. *Barr v. Post,* 56 Neb. 698; *Mangold v. Oft,* 63 Neb. 397, and cases cited. Neither the railroad company nor Schell pleaded self-defense, and

neither was therefore entitled to an instruction looking to exoneration on that ground. North alone pleaded self-defense, but even if all had so pleaded it would have been proper to have refused the instruction. The whole evidence utterly precludes the idea of self-defense, and no part of the evidence shows this more positively than that of the defendants Schell and North themselves. They were the active aggressors from start to finish, and the plaintiff was the aggressor at no time. It is true the defendants claim that when plaintiff got up he "came right up at him (North), started up with hands kind-of stuck up, and North hit him a couple of times more;" but it must be remembered that this was at a time after plaintiff had been knocked down once or twice, and North stood on one side of him with plaintiff's pistol in his hand and Schell on the other side with his own pistol in his hand, and plaintiff completely unarmed. Under these circumstances it is more than likely plaintiff's uplifted hands indicated a complete surrender on his part. Certainly plaintiff was in a poor position to become the aggressor, and defendants were in a worse position to claim that to knock him down under these circumstances and break his jaw they were acting in self-defense. "The doctrine of self-defense cannot successfully be invoked, however, where defendant's own acts brought on the difficulty with plaintiff." 5 C. J. 636, sec. 32. The instruction was properly refused.

Numerous assignments of error are made to the admission or rejection of testimony, only one of which, however, we think calls for special mention. Doctor Mantor was the defendant railroad company's regular physician at Sidney; he was also the physician who treated plaintiff for his injuries received from the assault, and on one or more prior occasions had treated plaintiff for other ailments, including facial paralysis. The plaintiff calling Doctor Mantor to the stand, he was asked to describe plaintiff's injuries, which he did, and among other things stated that he had sustained a fracture of the jaw. Upon

Acree v. North.

cross-examination he was asked if upon a prior occasion he had not treated the plaintiff for facial paralysis, and, upon stating that he had, he was then asked in a series of questions to state the condition of plaintiff's facial paralysis at that time; what effect the same had upon the muscular movements of the jaw or face, and what, if any, difference he observed in the condition of his face and jaw at his prior treatment and now. Objections to these questions were sustained on the ground of improper cross-examination and privileged. The defendants, then calling the doctor as a witness in their own behalf, asked him whether or not he had seen the plaintiff at different places on the street prior to the treatment of his present injuries, and, answering that he had, the witness was then asked: "Will you state whether or not there was any difference in the appearance of his jaw at the time you treated him on the 7th and in the time that you had seen him on the street prior to that?" Plaintiff objected to any answer thereto, "for the reason that the relation of physician and patient existed and any communication or information obtained by the doctor in the treatment would be privileged," which objection was sustained. This ruling seems to be regarded by defendant as a serious error and from it is sought to be raised the legal inquiry: How far may a physician be permitted to testify as to the physical condition or appearance of one from facts gained in a nonprofessional capacity whom he has before treated for the same or like conditions in a professional capacity? But we are of the opinion that upon the existing state of the record the inquiry suggested is not properly reached. The witness had not been properly qualified and the question put to him was premature, so, if but for that reason alone, the objection was properly sustained. The doctor at no time stated, nor at any time was he asked to state, whether or not he could give the information required of him by the question based solely upon his knowledge of the plaintiff derived unprofessionally, to the entire exclusion of knowledge derived profes-

sionally. This was essential to his competency to testify at all. Suppose he had been asked whether or not he could entirely separate and distinguish these two sources of knowledge and he had answered that he could not, that would have disqualified him for further inquiry. He was not asked to make this discrimination and at no time was it intimated to him that he must do so in order to render his answer to the question a proper one. Under these circumstances the witness was left at perfect liberty to draw to the fullest extent upon his experience, knowledge and information, gained while treating the plaintiff as a patient, and impress the same upon any answer he might make. This the witness could not be permitted to do. See, upon this point, *Larson v. State,* 92 Neb. 24.

Other assignments presented in defendant's brief and not mentioned herein are regarded as immaterial. Finding no reversible error in the record, the judgment of the lower court is

AFFIRMED.