ELMER P. FOLKEN, APPELLEE, V. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED JANUARY 7, 1932. NO. 27976.

C. A. McGaw, Thomas W. Bockes, Thomas F. Hamer and George W. Wertz, for appellant.

John C. Sprecher, contra.

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ., and REDICK, District Judge.

GOSS, C. J.

Plaintiff recovered a judgment for $1,526.40, for damages to his truck, caused by its collision· with defendant's engine.

(193)

Plaintiff had alleged and prayed for $879.25. At the conclusion of plaintiff's testimony on rebuttal, he asked leave to amend the petition to conform to the evidence as to the amount of damages. Defendant objected on the grounds that the request came after the proof was in and without opportunity to meet it, and that the defendant was taken by surprise. The objection was overruled. Plaintiff amended his petition so as to allege and pray for $1,750. The ruling is assigned as one of the errors. Defendant had submitted no evidence as to the amount of damages. After the amendment was allowed he did not ask to submit any evidence nor ask for a continuance. He contented himself with an exception to the ruling. That is the last word appearing in the bill of exceptions. Evidence had been received which, if properly admitted, justified a verdict for the amount prayed for in the amended petition. The amendment did not change the issues nor the character of the proof. Section 20-852, Comp. St. 1929, permits an amendment of a petition to conform to the proof where such amendment merely increases the amount of plaintiff's claim for damages in an action to recover for injuries to his truck arising out of a collision with defendant's engine. "Prejudicial error cannot be predicated on an order allowing a pleading to be amended, when the amendment does not change the issues, nor affect the *quantum* of proof as to any material fact." *Cate v. Hutchinson*, 58 Neb. 232. There was no error or abuse of discretion in allowing the petition to be amended.

The collision occurred about 9 o'clock on the night of September 19, 1927. Plaintiff had been engaged for several years in the business of trucking live stock to the Omaha market and bringing groceries back. He had secured a load of hogs and calves northwest of Schuyler. His route led him south across the defendant's railway at Schuyler by way of Colfax street, which is 66 feet wide. The middle 30 feet was graveled. The right of way is 100 feet wide. The railway runs almost east and west. About 20 to 25 feet north of the crossing was a light about 20 feet from

the ground on a pole on the west side of the street. About 50 feet south of the crossing on either side of the street was an electrolier with three lights on each iron post about 10 feet high. North of the tracks and west of the crossing is a coal-shed about 100 feet long and 18 feet high, about a foot from the right of way. South of the tracks is another coal-shed in about the same relative position and of about like dimensions. About 50 or 60 feet west of the crossing and between the north track and the west-bound main track stands the section-house or tool-shed, 12 by 16 feet, the height not shown. Two rows of telegraph poles are located about in a line with the south side of the section-house. Five tracks cross Colfax street. First, on the north, is the switch track, the center of which is 6 feet from the right of way line; it is 44 feet from this center to the center of the west-bound main track, 13 feet more to the center of the east-bound main track, 17 feet farther to the center of the next sidetrack, and 14 feet beyond that to the center of the fifth and last track on the south. It is 6 feet more to the south line of the right of way. The street lights were lit. The defendant maintained a wigwag and gong, located on the crossing about 20 feet north of the west-bound track. It does not operate except for trains on the above described east-bound and west-bound tracks. No watchman is provided for this crossing. Plaintiff had frequently used the crossing for years and knew these facts. It had been misting but had cleared. The night was dark.

Plaintiff was driving, accompanied by Arthur Spence, who had been employed by him for several years as a truck driver, who was also familiar with the crossing. The truck was equipped with headlights and brakes all in good condition. They approached the crossing going 12 to 15 miles an hour. Plaintiff saw that the signal was not operating, entered the crossing, looked east and west and saw no trains, fed his engine some more gas and proceeded across. As they were crossing the north main track, driving about 12 miles an hour, they heard two short whistles close together and saw an engine coming from the west on the

fourth track. Plaintiff applied both his emergency brake and his foot brake, but struck the engine a few feet back of the front near the steam chest. The truck was carried alongside the engine until the engine stopped. The truck had slipped back along the engine so when both came to a stop the truck was on the east sidewalk and the back of the engine was about 15 feet ahead of the truck. The engine was 60 or 70 feet long. There was evidence that the engine was coming on the crossing when it whistled, that it had no headlight, that the street lights from the electrolier on the south of the right of way would not shed light on the tracks very far west of the crossing because of the shadows cast by the coal-sheds adjoining the right of way on the south. The engine had brought a train from the west, had been uncoupled about a block away, and had been brought forward to take water at a point 500 feet east of Colfax street crossing. While the train crew and other witnesses for defendant testify that the headlight, as well as smaller lights on the engine, were burning, yet, on the assignment that there was not sufficient evidence for the jury to find that the headlight was not lighted, we must take the evidence as submitted to the jury. There was sharp conflict on this point.

Under section 74-572, Comp. St. 1929, a headlight of the power and visibility described in the section is required to be used at the time and in the service in which the engine was moving in the instant case. Failure of such equipment is evidence of negligence to be considered by the jury. Whether the plaintiff looked for the engine where by looking he could see or listened where by listening he could hear went rather to the question of his contributory negligence. The question of negligence of the defendant and of contributory negligence of plaintiff was submitted to the jury in an instruction on comparative negligence appropriately phrased. There is no ground for reversing the judgment for insufficiency of the evidence.

Error is assigned because the court, by its first instruction, submitted as one of the charges of negligence the

"permitting various obstructions on its right of way which partly shut off plaintiff's view to the west." Defendant claims this is not alleged in the petition. The petition is not artfully drawn, but no move was made to require it to be made more definite. The other charges of negligence given by the court to the jury were abstracted by the court from the fifth paragraph of the petition; but in the fourth paragraph thereof plaintiff alleged that "there are buildings erected near stated switches and close to said highway on the west of that crossing, which obstruct the view somewhat of drivers upon stated street." There was shown in evidence as obstructions "west of that crossing" only the section-house and the two lines of telegraph poles heretofore mentioned. This allegation of the petition evidently was intended as one of the items of negligence. There was about as much testimony concerning it as was received on some others of the four charges of negligence in the petition. The crux of the case of plaintiff was the question of the headlight. Defendant requested no instructions. Perhaps it would not have been error to have failed to instruct the jury as to these alleged obstructions, for erection and maintenance of convenient structures is not ordinarily negligence as to one who is familiar with the situation. *Rickert v. Union P. R. Co.*, 100 Neb. 304. Yet there was some evidence on the subject, and so we think there was no prejudicial error in the giving of the instruction.

Defendant complains of the ninth instruction, in which the court abstracts section 74-562, Comp. St. 1929, requiring either a bell to be rung or steam whistle to be blown on each locomotive "at least eighty rods from the place where the railroad shall cross any road or street, and be kept ringing or whistling until it shall have crossed such road or street." The jury were instructed they might consider these requirements in determining questions of negligence and contributory negligence. The evidence on behalf of plaintiff justified this instruction.

Plaintiff's truck was an International. He testified he had one of the mechanics from the International Harvester

Company at Omaha come up, go over it and give him an estimate on the cost of repairing it to put it in as good condition as before. On defendant's objection he was not allowed to state the estimate. He then was permitted, without objection, to state that it was worth $2,000 to $2,500 before the collision. Thereupon he was asked its value after the collision. Defendant objected on the ground of no foundation and hearsay. The objection was overruled and he stated the value as $250. Plaintiff's counsel asked him how he knew that. Defendant's counsel objected to his answering the question on the ground it was incompetent, and the objection was sustained. Defendant claims it was error to allow plaintiff to testify to the value of his truck after the collision. In an action for damages on account of injury to personal property, the owner thereof is qualified by reason of that relationship to give his estimate of its value. 22 C. J. 581; *Hespen v. Union P. R. Co.,* 82 Neb. 495; *Hawkins v. Collins,* 89 Neb. 140; *Neal v. Missouri P. R. Co.,* 98 Neb. 460; *Gibbons v. Chicago, B. & Q. R. Co.,* 98 Neb. 696; *Miller v. Drainage District,* 112 Neb. 206. The testimony of the plaintiff had shown that the collision and dragging of the truck broke up its engine and "pretty well damaged" the front end of the truck and "the frame all over (was) bent around out of shape." This made the difference in value rule, which was given to the jury and is not assigned as error, applicable. There is no other evidence as to the injuries to the truck. The testimony of the plaintiff, owner of the truck, as to its value before and after the injury was competent to be submitted to the jury to be weighed for whatever the testimony seemed worth.

The judgment of the district court is

AFFIRMED