GERALD ELLIOTT, APPELLEE, v. SWIFT & COMPANY, A CORPORATION, APPELLANT.

39 N. W. 2d 617

Filed November 18, 1949. No. 32638.

*Dryden, Jensen & Dier,* for appellant.

*Blackledge & Sidner,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law to recover for personal injuries and property damage resulting from a collision between the plaintiff's automobile traveling east and defendant's truck traveling north at an intersection of a graveled road and a dirt road located in the southeast corner of Section 22, Divide Township, Buffalo County, Nebraska. Upon trial to a jury plaintiff was awarded a verdict of $1,267.35, and the jury found against the defendant on its counterclaim. Judgment was rendered on the verdict. Motion for new trial and motion for judgment notwithstanding the verdict were overruled. Defendant appeals.

For convenience the parties will be referred to as originally designated in the district court.

The theory of the plaintiff's case, as shown by his petition, charged defendant's driver with negligence in that he operated the truck at a high and excessive rate of speed, failed to keep a proper lookout, failed to yield the right-of-way to plaintiff's vehicle at the intersection after the plaintiff had entered first therein and was approximately halfway across the same, and failed to have the defendant's truck under proper control to prevent it from running into and against the plaintiff's automobile.

The defendant, for answer, denied generally the allegations of the plaintiff's petition and affirmatively alleged that the plaintiff was guilty of contributory negligence which proximately resulted in the damage to the plaintiff as alleged in his petition. By cross-petition the defendant charged the plaintiff with negligence in that the plaintiff drove his automobile at a high and excessive rate of speed greater than was reasonable and prudent under the circumstances and conditions at the time, that the plaintiff failed to maintain a proper lookout, failed to yield the right-of-way at the intersection to the defendant, and failed to maintain proper control of his car to prevent the same from running into and against the defendant's truck.

The plaintiff's reply to the defendant's answer and counterclaim was in effect a general denial.

The record discloses that the plaintiff was the owner of a 1941 Chevrolet coupé. On the morning of November 6, 1948, he was driving the same en route to his brother's home. The car was in good mechanical condition. The day was clear and the highway dry. He proceeded east on a graveled highway designated as the "east-and-west" road, which is not a marked highway, at a rate of speed of from 30 to 35 miles an hour. He had driven over this road on many occasions. He was familiar with what is referred to as the "north-and-south" dirt road and with the intersection where the two roads cross. There were no stop signs at the intersection in question. In ap-

proaching the intersection from the west there is a down grade about 30 feet before the intersection is reached. The highway west of this point is level for about half a mile. When he approached the intersection and was about 75 feet west of it, he looked first to the right or south, then to the left or north. He saw no vehicle approaching from the south on the north-and-south road. About 10 to 15 rods south of the intersection there was a down grade referred to as a "swale" 5 or 6 feet deep, which has a tendency to conceal a car which may be at that point, to some extent. Failing to see a vehicle approaching from the south or north, he proceeded into the intersection and looked both to the north and south and saw no vehicle approaching from the south. He slowed his speed a little. When he had proceeded halfway into the intersection with the back part of his car just over the center part of the intersection, he looked through a small window on the side of his car and at that time saw the truck ready to collide with his automobile. He did not know it was approaching until that instant. It was toward the east side of the intersection as it was approaching north.

The front part of the truck struck the plaintiff's automobile just ahead of the back right fender. The car was in the southeast part of the intersection at the time. The sun was in the southeast and at an angle which interfered with his vision to the south to some extent. As he proceeded into the intersection he could see through the intersection to the east without difficulty, and testified that he was in the intersection first.

The defendant's driver testified that he was employed by the defendant and used one of its trucks, a 1946 ton-and-one-half Chevrolet truck, for the purpose of picking up produce, and was doing so on the morning the accident occurred. He had driven over the north-and-south road and was familiar with the intersection. He approached the intersection from the south at a speed of about 30 miles an hour. When he was 150 yards south of the

intersection and south of the swale, he looked to the west and saw no car approaching the intersection from that direction. He then looked to the east, turned back, and the collision occurred. The car which came from the west was right in front of him. He was about in the center of the intersection, driving on the east side. He further testified that there was no place on the north-and-south road where a car would be completely concealed from a car coming from the west, unless it would be as indicated previously; and that his truck measured 11 feet from the ground to the top. After striking the plaintiff's automobile which went ahead of the truck into the northeast corner of the intersection, the truck tipped over on its right side, turned around and faced south in the northeast corner of the intersection. The Chevrolet car, after the accident, was close to and east of the truck, also facing south. It did not turn over.

The accident caused the plaintiff's head to go through the windshield, and when his car came to a halt the door was pushed out and he fell to the ground on his feet. He described various cuts on his head and face.

The plaintiff testified the damage to his car consisted of the following: The right door was caved in a foot or a foot and a half into the car; the front seat was disconnected from the frame, broken off, and pushed out through the door; the back fender on the right side was smashed in; the gears and the transmission were damaged; the right back wheel was out of line with the right front wheel; and the windshield was broken and the glass shattered.

The damage to the truck was mostly on the front end. The frame was broken on both sides where the spring shackles fasten on, and the headlights were broken.

A witness who lived within 400 or 500 feet from the scene of the accident testified that he did not see the accident but heard the crash, and arrived at that point 30 minutes after the accident happened. He made some inspection of the intersection and observed tracks or skid

marks. Referring to the place in the intersection where the accident occurred, he testified it would be east of the center of the intersection and, with relation to the east-and-west line, on the south side thereof. He further testified that approaching the intersection from the west to the east at a distance of 100 feet there is a little incline and west of that incline it is practically level for half a mile. From the south approaching north to the intersection there is a little hill, and approximately 20 rods south of the intersection there is a swale which was about 6 to 10 feet lower than the road in the intersection. He observed the position of the vehicles in the northeast corner of the intersection and the damage to each, and testified with reference thereto substantially as the other witnesses heretofore set out.

A deputy sheriff testified that he arrived at the scene of the accident at 8 a. m., very shortly after it occurred, and saw the position of the automobile and truck after the accident. Neither vehicle had been moved. He described the location of them as the other witnesses described it, and testified that from his observation there was nothing to obstruct the vision of a driver coming from the south looking to the west, nor any obstruction to the vision of a driver coming from the west proceeding east. He testified that the plaintiff told him he did not see the truck approaching from the south, and that the sun was in his eyes as he came over the little incline in approaching the intersection. There was debris and glass located at the center of the intersection. He observed slide marks for a distance of 40 feet, starting at the south side of the intersection to where the truck came to a stop in the northeast corner thereof. These marks, with relation to the north-and-south road, were in the center of the intersection from all directions, and they went in a straight line toward the northeast corner. As the truck slid in a northeasterly direction it turned around and came to a stop facing south.

The defendant's first assignment of error is that the

plaintiff was guilty of negligence more than slight and sufficient to bar his recovery as a matter of law, and that the trial court erred in overruling a motion for directed verdict at the close of the plaintiff's case and at the close of all of the evidence.

Defendant argues that its driver, in approaching the intersection from the right, had the right-of-way; that there is no evidence that the plaintiff entered the intersection first, and none from which inferences can be drawn; and that the plaintiff was negligent in entering the intersection with knowledge that a truck was approaching and not watching for it.

The rules in this state are that when a person enters an intersection of two streets or highways he is obligated to look for approaching cars and to see those within that radius which denotes the limit of danger. If he fails to see an automobile not shown to be in a favorable position, the presumption is that its driver will respect his right-of-way and the question of his contributory negligence in proceeding to cross the intersection is a jury question. Before a verdict can be properly directed in such a case the position of the defendant's car must be definitely located in a favored position, otherwise the question becomes one for the jury. See, Gorman v. Dalgas, *ante* p. 1, 36 N. W. 2d 561; Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596.

Section 39-728, R. S. 1943, provides: "Motor vehicles traveling upon public highways shall give the right of way to vehicles approaching along intersecting highways from the right, and shall have the right of way over those approaching from the left when said vehicles shall reach the intersection at approximately the same time. *In all other cases the vehicle reaching the intersection first shall have the right of way.*" (Emphasis supplied.)

That the defendant's driver was on the right of the plaintiff's car when each was approaching the intersection is not in dispute. However, in view of the rules heretofore set out and the latter sentence in the right-

of-way statute, we cannot under the evidence before us find as a matter of law that the defendant had the right-of-way as it would have us do. Since the evidence warranted a reasonable inference that the plaintiff entered the intersection first, he had the right-of-way over the defendant, and whether the defendant negligently violated that right was a question for the jury to decide under appropriate instructions by the trial court. See, Showers v. Jones Co., 126 Neb. 604, 253 N. W. 902; Meyer v. Platte Valley Construction Co., 147 Neb. 860, 25 N. W. 2d 412.

The law is well established in this jurisdiction that, where the evidence is such that reasonable minds might draw different conclusions therefrom, the questions of negligence and contributory negligence are for the jury. See, Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175; Meyer v. Platte Valley Construction Co., *supra.*

The defendant further argues that from the evidence it would appear that when the sun was in the plaintiff's eyes he should have slowed down or stopped, or looked in a position where by looking he could see, thereby doing, under the circumstances, what a reasonable and prudent man would have done, and by failing to do so, such negligence on plaintiff's part bars his recovery.

In this connection defendant cites Anderson v. Robbins Incubator Co., 143 Neb. 40, 8 N. W. 2d 446, and other cases to the effect that the existence of smoke, snow, fog, mist, blinding headlights, or other similar elements which materially impair or wholly destroy visibility, are not to be deemed intervening causes, but rather conditions which impose upon the drivers of automobiles the duty to protect the public by the exercise of care commensurate with such surrounding circumstances.

We conclude that, under the facts as heretofore set out, the question was for the jury as to whether or not the plaintiff continued to exercise the care of a reasonable

and prudent person under similar circumstances.

The defendant contends the trial court erred in permitting the plaintiff to testify as to the value of repairs and the cost of the same.

The record discloses that after the accident the plaintiff's automobile was taken to a garageman. An estimate was given, and destroyed. The garageman was unable to testify due to illness. The plaintiff testified that he had driven and owned automobiles since he was 18 years of age, or for a period of 12 years, and that at different times he had purchased repairs for automobiles and had a general knowledge as to the approximate cost of parts and repairs. After the accident he personally examined his automobile, and testified in detail as to the damage. He was asked as to the fair and reasonable value of replacement and restoration as a result of the damage, and gave as his opinion that it would cost $600 to repair his car. He testified that the fair and reasonable value of his automobile before the accident was $1,300.

The defendant moved to strike all of the evidence of the plaintiff with reference to damage to his vehicle for the reason that no sufficient foundation was laid for the introduction thereof as to the values of repairs. This motion was overruled.

"An expert or other witness with such knowledge and experience as to qualify him to form a reasonably intelligent judgment may state his opinion as to the amount and extent of damages sustained, at least where he details the elements of damage or the items on which the estimate is based, the rule being that the best evidence of which the subject will admit is receivable, * * *." 32 C. J. S., Evidence, § 447, p. 77.

Whether a witness' qualification to state his opinion is sufficiently established rests largely in the discretion of the trial court, and its ruling thereon will not ordinarily be disturbed on appeal unless there is a clear showing of abuse. See 32 C. J. S., Evidence, § 458, p. 99.

In Folken v. Union P. R. R. Co., 122 Neb. 193, 239 N.

W. 831, the court held: "In an action for damages on account of injury to personal property, the owner thereof is qualified by reason of that relationship to give his estimate of its value." See, also, Cox v. Greenlease-Lied Motors, 134 Neb. 1, 277 N. W. 819.

The expert called by the defendant, who testified with reference to the repairs and the value thereof necessary to put the defendant's truck in the same condition as before the accident, also testified to certain items that would be required to repair the plaintiff's automobile, and gave an estimate of approximately $250.

The trial court did not commit prejudicial error in admitting the testimony of the plaintiff as to the value of repairs and the cost of the same.

The defendant assigns as error the ruling of the trial court in refusing to admit into evidence the deposition of the plaintiff taken prior to trial, arguing that the deposition was admissible for the purpose of impeachment and admissions against interest, and for the purpose of showing that the plaintiff understood the questions and answers at the time the deposition was taken.

The record discloses that upon an extensive cross-examination of the plaintiff each and every relevant and competent question and answer contained in the deposition was propounded to him, and he admitted the truth of the answers. The matters referred to as impeachment or admissions against interest are that the plaintiff did not slacken his speed as he approached the intersection, and that in the deposition he stated that the sun was bright, penetrated through the windshield and placed him in a position where he could not see to the south where the defendant's truck was approaching the highway. He admitted he made the answers. The other matters which might disclose some inconsistency in his testimony need not be related. Suffice it is to say that the jury had the benefit of all of this evidence given by the plaintiff in the deposition and his evidence at the trial. Under the circumstances this testimony went to

the credibility of this plaintiff, upon which the jury passed. To have received the deposition in evidence would have unnecessarily encumbered the record, and the court's refusal to admit it under the circumstances does not constitute prejudicial error.

For the reasons given herein, judgment on the verdict is affirmed.

AFFIRMED.