SCHOOL DISTRICT NUMBER 162 OF GAGE COUNTY, NEBRASKA, ET AL., APPELLEES, V. GROSSHANS & PETERSEN, INC., A CORPORATION, APPELLANT.

99 N. W. 2d 601

Filed December 4, 1959. No. 34600.

*Sackett, Brewster & Sackett, William B. Rist,* and *Robert F. Galloway,* for appellant.

*P. M. Everson* and *Halcomb, O'Brien, Knapp & Everson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for damages to a school building owned by plaintiff district allegedly caused by dyna-

mite explosions in a rock quarry operated by the defendant. Issues were made. Trial to a jury was had. The jury found for the plaintiffs. Judgment was entered on the verdict. Defendant appeals. We affirm the judgment of the trial court.

At the close of all the evidence defendant moved for a directed verdict on the ground that the plaintiffs had failed to prove any causal connection between the operations of the defendant and damages to plaintiffs' property.

By assignment here defendant contends that the failure to sustain the above motion was error. This in turn rests upon the argument that the evidence of plaintiffs' expert witness was erroneously admitted and that, absent that evidence, the required proximate cause resulting in damage was not established.

The evidence is here stated under the established rule that such a motion admits the truth of all competent evidence favorable to the party against whom the motion is directed; that every controverted fact must be resolved in its favor; and that it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. We state the evidence favorable to the plaintiffs.

The school building was built about 1920. It was of brick construction on a concrete foundation. There was no steel reinforcement. Sometime prior to 1954 a settlement crack appeared in the east wall. That was repaired in 1954. There is also evidence of some replastering that was done prior to that time. The building was inspected, repaired, and repainted in 1954.

The quarry operated by defendant was located about one-half mile from plaintiffs' building. The building was in the village of Holmesville.

Beginning about December 23, 1955, and at various times until April 27, 1956, defendant used dynamite to blast rock in the quarry. The blasting was so done as to break the rock into pieces sufficiently small to

go through a crusher so that the rock could be used in highway construction. Defendant often prepared as many as 48 holes for one explosion. These were drilled to depths of as much as 20 feet. Dynamite was placed in these holes to within 30 to 36 inches of the top. Dirt was then tamped in the holes to lessen any upward push of the explosion. The dynamite was so wired that it exploded in "delays" of 25/1000 of a second, and there were from two to four delays in each explosion. Beginning December 23, 1955, and ending April 27, 1956, defendant exploded dynamite 2 days in December, 9 days in January, 10 days in February, 21 days in March, and 11 days in April. On several days there were two and sometimes three and four explosions a day.

Plaintiffs offered evidence of lay witnesses living within a radius of 2½ miles of the schoolhouse, and other witnesses who were close to or in the schoolhouse when blasts occurred. These witnesses described the effects of explosion blasts at the quarry which they observed as "the house shook"; "vibration" was felt when a car was driven near the quarry; "barn vibrated"; the "house commenced to quiver and the windows rattled"; "dishes rattled in the cupboard"; an elevator building "shook," windows rattled, and "the bars on my scale * * * rattled"; "could feel the ground shake"; cans on the shelves of a store "shook" and the floor "shook"; china in a cabinet "shook"; large rocks were blown out and upon land of one of the witnesses; the blast "shook the earth"; a furnace rattled; in the school building the blast "shook us"; light fixtures swayed; and there was rattling of the windows and vibration in the schoolhouse.

The above paragraph is not an all-inclusive statement of the evidence of what lay witness after witness testified as to what they saw and observed.

Defendant does not contend that said vibrations did not follow directly from these explosions. Rather defendant's evidence was to the effect that the vibrations

could not have been of sufficient magnitude to have caused the damage about which complaint is made.

During the months of the blasting large cracks appeared in the walls of the schoolhouse where the brick separated, and cracks appeared in the plaster on walls and ceiling and in the concrete tunnel in the basement. Bricks pulled away from joists at the top of the walls. The extent of these cracks need not be recited as the extent of the damage to the building is not an issue here. It is sufficient to point out that they appeared to a large extent in that part of the building that received the first impact of vibrations from the quarry.

Plaintiffs' expert witness investigated the plaintiffs' school building and examined its exterior and interior walls for evidence of structural failure; he examined the attic, the basement tunnel, and the roof; he described the construction; and he described the condition of the walls, ceiling, etc., largely in corroboration of plaintiffs' custodian witness.

Plaintiffs' expert witness was examined and cross-examined extensively and often as to his qualifications. He was a graduate of the College of Engineering of the University of Nebraska; he worked for several years as a structural engineer designing power plant buildings; he worked with a consulting engineering firm doing structural design and cost estimates on schools, churches, dwelling houses, warehouses, and factory buildings; his work involved the structural soundness of masonry walls; in training and practice he had made a study of the various causes of structural failures in buildings in order to avoid their recurrence in buildings designed; he had had formal training in the effect of vibration on structures and in dealing with the loads which come or fall on structures caused by vibration; he had studied writings devoted solely to the subject of ground vibrations; in his practical experience he had noted the effect of forces upon buildings; he had read technical articles and books upon building failures; he

had knowledge of the nature of the ground between the quarry and the schoolhouse; he had examined the exposed soil profile at the quarry and made a soil boring at the schoolhouse; and he explained the types of vibrations which occur in the soil when an explosion occurs. He testified that in his opinion the damage was caused by a horizontal movement of the bearing walls; as to the effect of a repetition of vibrations, which singly might not cause a failure but if repeated eventually could do so; and that the appearance of the damage may be delayed.

The witness was permitted to testify as to the age, in his opinion, of the cracks in various parts of the building. His testimony in this regard was largely corroborative of the custodian's evidence. He gave as his reason the difference of color of the surface in contrast with the surface of the cracked area, the absence of dust or debris, etc. The witness was also permitted to testify that in his opinion the damage to plaintiffs' building (other than the settlement cracks which appeared earlier and which no one claims were caused by defendant) was caused by a horizontal force which was vibration in the ground.

Defendant contends that the expert witness was incompetent to testify as to all of the above evidence and more of like kind.

On cross-examination the witness testified that wind was not the cause of the failure and that the only other possible source of failure was a ground movement exerting force upon the building. He distinguished a settlement crack from the cracks here involved. He testified that the ground vibrations were the only possible cause of the cracks and other conditions that appeared in the building during and after the blasting operations of the defendant.

Defendant's contention here is that there is no direct evidence that explosions in the quarry caused the damage to the school building, and that proximate cause

could only be established by resort to the opinion evidence of plaintiffs' expert witness.

The rule is: Whether a witness' qualification to state his opinion is sufficiently established rests largely in the discretion of the trial court, and its ruling thereon will not ordinarily be disturbed on appeal unless there is a clear showing of abuse. Elliott v. Swift & Co., 151 Neb. 787, 39 N. W. 2d 617.

We see no abuse of discretion in the court permitting the witness to testify. Having in his opinion eliminated soil settlement as a cause and established ground vibration as a cause, there remained only one source of the cause of vibrations and that was the dynamiting of rock at the quarry by the defendant.

We find no error in the admission of the evidence of the expert witness and accordingly no error in the trial court's refusal to sustain a motion for a directed verdict.

Defendant assigns error in the giving of instruction No. 10 which was as follows: "You are instructed that defects existing in the school building before the blasting operations in the Holmesville quarry by the defendant form no issue in this case.

"However, in determining the damages in the event you find for the plaintiff, you should not diminish the amount of the damages by the cost of repair of defects in said school building existing prior to blasting if you find by preponderance of evidence that repairs of such pre-existing defects is necessary to effect repairs of defects resulting proximately from blasting." Instruction No. 9 was in part: "You are instructed that if, under the evidence and these instructions, you find for the plaintiff, then you will assess the amount of plaintiff's recovery at such sum as you find to be the reasonable cost of such repairs as will put the school building in the same condition as it was immediately preceding the injury."

Plaintiffs' expert witness on damages excluded any

items requiring repair which existed prior to the defendant's blasting operations. He fixed the fair and reasonable cost for the repairs, including architect's fee, at $53,900. Defendant's expert witness made like exclusions and fixed the reasonable cost of repairs at $23,100. Defendant here states that there is no evidence that repairs to preexisting damage were required in order to effect repairs to the damage claimed to have resulted from the blasting. The jury fixed the damages at $25,750. Defendant does not contend that there was error in that amount. We had a similar situation in Acree v. North, 110 Neb. 92, 192 N. W. 947, where there was no evidence to which a clause in an instruction could apply. We held the giving of the instruction in the manner noted was an inadvertence which could not have misled the jury. The holding of the case is that an instruction with reference to the measure of damages is not reversible error where the amount of the judgment is sustained by evidence as to damages to which no objection is made and the defeated party makes no complaint as to the amount of the verdict and judgment.

Finally defendant complains because the court in instruction No. 7 referred to "proximate *cause* of the blasts" where patently proximate result was meant. Defendant does not claim prejudice and none appears.

In Stein v. Vannice, 44 Neb. 132, 62 N. W. 464, we held: "A slight error in an instruction will not cause a reversal of the judgment, where it is manifest the party complaining was not prejudiced thereby."

We find no merit in the assignment.

The judgment of the trial court is affirmed.

AFFIRMED.

CHAPPELL, J., participating on briefs.